IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTERN HOWARD CORPORATION, )<br>an Illinois Corporation, successor in interest to )<br>PARKWAY BANK & TRUST CO., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INDIAN HARBOR INSURANCE COMPANY, )<br>)<br>Defendant. ) | Case No.: 1:10-CV-7857<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to dismiss [10] filed by Defendant Indian Harbor Insurance Company, seeking dismissal of Counts III and IV of Plaintiff Western Howard Corporation's complaint. For the reasons set forth below, the Court grants Defendant's motion to dismiss.

**I.  Background**[1]

On June 17, 2008, Indian Harbor Insurance Company ("Indian Harbor") issued an insurance policy to Western Howard Corporation ("Western"). The policy had an effective date of June 17, 2008, and an expiration date of June 17, 2009, and provided insurance coverage for property damage occurring at 2451 West Howard Street, Chicago, Illinois. The insured premises consisted of a sixty-three unit apartment building with apartments on six floors and an elevator servicing each floor. The policy stated in part: "We will pay for direct physical loss of or

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The policy provided coverage for water damage as follows:

> If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

On December 31, 2008, a plumbing fixture broke under the kitchen sink of Unit 602 and water began to leak into Unit 602 and the surrounding areas. Unit 602 is on the sixth floor and was unoccupied at that time. The water leaked into the walls, floor, and elevator surrounding and below Unit 602. As soon as the leak was discovered, Western contacted its insurance agent, Adamjee Insurance Agency, Inc., to report the loss. When it became apparent that the amount of loss was in excess of the policy deductible of $10,000.00, Adamjee filled out a property loss notice to initiate the claims process. In April and May of 2009, a claims investigator for Indian Harbor requested documents relating to the claim. Western made its first tender of documents on June 16, 2009.

On October 20, 2009, Western's attorneys received a letter from Indian Harbor stating, "At this time, Indian Harbor is unable to accept or reject Mr. Park's proof of loss as additional information is necessary." The October letter requested additional documentation, and on November 23, 2009, Western made a second tender of documents to Indian Harbor's attorneys. On November 30, 2009, Indian Harbor took examinations under oath of Bae Kim and Gary Fredrickson, and on December 29, 2009, took examinations under oath of Kyun Hee Park and Jennifer Park. Then on January 8, 2010, Indian Harbor demanded additional documents, and Western made its third tender on February 19, 2010, despite Western's belief that the many of the requests were unduly burdensome and irrelevant to the loss.

2

As of March 19, 2010, Western had not received a response from Indian Harbor with respect to its claim, prompting Western to demand payment on the claim. Western's demand letter pointed out that the loss had been incurred over fifteen months prior and that the delay in payment was causing it significant financial hardship. By May 12, 2010, Western still had not received a response to its March 19 demand for payment, and Western's attorneys drafted a second letter demanding payment.

On May 13, Indian Harbor's attorney forwarded a letter to Western's attorney dated May 5, 2010, from U.S. Adjustment Corp. and titled "Letter of Declination." The letter denied coverage from the claim and set forth one exclusion and two breaches of the policy purportedly justifying the denial. The letter cited an exclusion for coverage of water damage applicable when the damage results from freezing and the insured fails to "do [its] best to maintain heat in the building or structure." The letter also claimed that Western breached the policy by failing to give prompt notice of the loss and by intentionally misrepresenting material facts concerning the loss. The letter advised Western that if it wished to contest the denial of coverage, it must institute a legal proceeding.

In November 2010, Western, an Illinois corporation, filed suit against Indian Harbor, a North Dakota corporation, in the Circuit Court of Cook County, Illinois, for breach of an insurance policy (Count I), unreasonable and vexatious conduct under § 155 of the Illinois Insurance Code (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count III), and common law fraud (Count IV). Indian Harbor removed the case to this Court,[2] answered Counts I and II, and moved to dismiss Counts

---

[2] The Court has jurisdiction over this action under 28 U.S.C. § 1332.

III and IV (referred to as the "fraud counts"). Indian Harbor contends that the fraud counts are preempted by § 155 of the Illinois Insurance Code and are not pled with the requisite level of particularity required of fraud allegations.

## II.     Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.    Analysis

In addition to its claims for breach of an insurance policy (Count I) and unreasonable and vexatious conduct under § 155 of the Illinois Insurance Code (Count II), Plaintiff Western Howard has brought claims for violation of the Illinois Consumer Fraud and Deceptive Business

4

Practices Act (Count III) and common law fraud (Count IV). Defendant Indian Harbor contends that the fraud counts mirror the breach of contract allegations and allegations found in Count II, are preempted by § 155 of the Illinois Insurance Code, and are not pled with the requisite level of particularity required of fraud allegations.

Based on the allegations in the complaint, Western clearly has stated claims for breach of the insurance policy and for violation of § 155. Where an insurer has engaged in "unreasonable or vexatious conduct," § 155 of the Illinois Insurance Code allows an insured to recover attorney's fees and extracontractual damages. See *Cramer v. Insurance Exch. Agency,* 675 N.E.2d 897, 904 (1996). The Supreme Court of Illinois has explained that this statute, while not the exclusive remedy for tortious conduct by an insurer, essentially substitutes for a separate tort of "bad faith." *Id.*; see also *Jump v. Schaeffer & Associates Ins. Brokerage, Inc.*, 123 Fed. Appx. 717, 720 (7th Cir. 2005). At a minimum, the actions alleged by Plaintiff seem to be among the types of conduct that the Supreme Court of Illinois contemplated in holding that allegations of bad faith state a claim under § 155, although they may not amount to an independent tort. See *Leona's Pizzeria, Inc. v. Northwestern Nat'l Cas. Co.*, 203 F. Supp. 2d 930, 933-34 (N.D. Ill. 2002). The question remains whether Plaintiff's fraud claims amount to *more* than a claim for bad faith denial of a claim under the policy.

To succeed on a claim for deceptive conduct under the ICFA, Plaintiff must allege (1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. See *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 594 (Ill. 1996); *Zankle v. Queen Anne Landscaping,* 724 N.E.2d 988, 992 (Ill. App. Ct. 2d Dist. 2000); see also *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345

5

(7th Cir. 2005). The Consumer Fraud Act applies to "unfair practices in adjusting insurance claims." *Casualty Ins. Co. v. Hill Mechanical Group,* 753 N.E.2d 370, 376 (Ill. App. Ct. 1st Dist. 2001). In order to prevail on a claim for common law fraud in Illinois, a Plaintiff must prove (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from this reliance. See *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (1996). To sustain a cause of action on common law fraud, Fed. R. Civ. P. 9(b) requires the plaintiff to plead the circumstances constituting fraud with particularity, including the circumstances of the fraud, the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. See *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

According to Western's complaint, the conduct forming the basis the fraud claims includes Indian Harbor's failure to pay the claim; a "bad faith demand" for documentation of the claim; Indian Harbor's position that it denied the claims due to the action of Western or its agents; Indian Harbor's delay in resolving the claim; and Indian Harbor's representation in its policy that "it would pay valid claims," when in fact it has not paid. Compl. at ¶¶ 63-69, 70-89. Based on these allegations, Western maintains that Indian Harbor has engaged in a "scheme to defraud" in which it "knowingly misrepresented the manner in which it would pay and investigate claims made by its insureds." Pl.'s Resp. at 2.

The Illinois Supreme Court has recognized that "an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." See *Cramer*, 675 N.E.2d at 904. However, "[m]ere allegations of bad faith or unreasonable and vexatious

conduct, without more * * * do not constitute such a tort" and courts are advised to "look beyond the legal theory asserted to the conduct forming the basis for the claim." *Id.* Moreover, the Supreme Court clearly has stated that "[a] breach of [a] contractual promise, without more, is not actionable under the Consumer Fraud Act." See *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 844 (Ill. 2005). Thus, when "breach of contract and Consumer Fraud Act counts rely on the same facts," it is clear that the consumer-fraud claim "is merely a breach of contract count clothed as a violation of the Consumer Fraud Act." *Sklodowski v. Countrywide Home Loans, Inc.,* 832 N.E.2d 189, 196 (Ill. App. Ct. 1st Dist. 2005); see *Zankle,* 724 N.E.2d at 992 ("Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action."). In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct. See *id.* But when a separate tort claim essentially is based on an insurer's failure to pay amounts purportedly due under an insurance contract, such claims are preempted by contractual remedies and those found in § 155. *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 757-58 (Ill. App. Ct. 1st Dist. 2004).

In *Avery,* the plaintiffs utilized the promises made by the defendant insurance company in the insurance policy to define their consumer fraud action. *Avery,* 835 N.E.2d at 843-44. In the consumer fraud count, the plaintiffs specifically alleged that the defendant violated express written provisions of the policy, and that the defendant failed to fulfill its contractual obligations. *Id.* The Illinois Supreme Court held that the consumer fraud action failed as a matter of law because the allegations were based solely on the fact that the defendant breached the insurance policy. *Id.* at 844. Likewise, in *Zankle,* the Illinois Appellate Court rejected the plaintiff's

7

consumer fraud claim because consumer fraud "involves more than the mere fact that a defendant promised something and then failed to do it." *Zankle,* 724 N.E.2d at 993; see *Kindernay v. Hillsboro Area Hosp.,* 851 N.E.2d 866, 880 (Ill. App. Ct. 5th Dist. 2006).

In the instant matter, Plaintiff premises both its statutory and common law fraud claims on essentially the same conduct it alleges in Counts I and II. All of Western's claims rely on allegations that Indian Harbor's failed to pay the claim, made "bad faith" demands for documents, conducted a burdensome investigation, delayed in resolving the claim, rested the denial of the claim on the actions or inactions of Western or its agents, and represented in its policy that "it would pay valid claims," when in fact it has not paid. Compl. at ¶¶ 63-69, 70-89. This conduct, while potentially "unreasonably and vexatious," does not state a claim for an independent tort. At bottom, Plaintiff's fraud claims are based on Indian Harbor's failure to pay in accordance with its obligations under the policy and to fairly investigate the claim. Western attempts to shoehorn these failures into fraud by alleging that the failures were intentional and part of a "scheme to defraud," but these conclusory allegations simply are not enough. On their face, these claims are functionally identical to the claims made in *Young v. Allstate Insurance Company* and *Leona's Pizzeria, Inc. v. Northwestern National Casualty Company*, in which both courts determined that the fraud-type claims amounted to no more than a denial of benefits and breach of contract, with an accompanying bad faith claim under § 155. See *Leona's*, 203 F.Supp.2d at 933 ("A claim that an insurer is 'lying after the fact to avoid paying [a] claim' amounts to no more than a claim for denial of benefits and breach of contract, and is preempted by § 155"); *Young*, 812 N.E.2d at 757–58 ("Allegations of an insurer's bad faith or unreasonable and vexatious conduct do not alone constitute a tort."); see also *Mazur v. Hunt*, 592 N.E.2d 335,

340 (Ill. App. Ct. 1st Dist. 1992) ("[A]ny count alleging nothing more than the conduct proscribed by section 155 is preempted by the statute.").

"When a purported tort claim boils down to an insurer's failure to pay, the remedies provided in § 155 and for breach of contract cover the claim and are sufficient" and the tort claim must be dismissed. *E.J. Sieron, et al. v. Hanover Fire and Cas. Ins. Co.*, 485 F. Supp. 2d 954, 961 (S.D. Ill. 2007) (citing *Cramer*, 675 N.E.2d at 905). Regardless of how frustrating the process has been for Plaintiff, the actual basis of the Plaintiff's complaint is a contractual action on the policy with an accompanying statutory claim under § 155 for aggravated conduct by Indian Harbor (which, as noted earlier, provides for attorney's fees and extracontractual damages). Here, none of Plaintiff Western's claims amount to more than a claim for bad faith denial of a claim under the policy. See *Cramer,* 675 N.E.2d at 905; see also *Combs v. Insurance Co. of Ill.,* 497 N.E.2d 503, 508 (1986) (holding that claim of bad faith denial of benefits, framed as claim for intentional infliction of emotional distress, was preempted by § 155). Therefore, dismissal of the fraud counts is appropriate.

### III. Conclusion

For the reasons set forth above, the Court grants Defendant's motion to dismiss [10] and dismisses Counts III and IV.

Dated: June 29, 2011 　　　　　　　_____
　　　　　　　　　　　　　　　　　Robert M. Dow, Jr.
　　　　　　　　　　　　　　　　　United States District Judge